**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

RONALD J. CASTROVIANCI,

        Plaintiff,

v.                                      Case No:  2:17-cv-179-FtM-99CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

**REPORT AND RECOMMENDATION**[1]

Plaintiff Ronald J. Castrovianci seeks judicial review of the denial of his claims for disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the Joint Memorandum (Doc. 24), and the applicable law.   For the reasons discussed herein, the Court recommends the decision of the Commissioner be reversed, and this matter be remanded pursuant to 42 U.S.C. § 405(g), sentence four.

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.   In order to expedite a final disposition of this matter, if the parties have no objection to this Report and Recommendation, they promptly may file a joint notice of no objection.

## I.    Issues on Appeal[2]

Plaintiff raises six issues on appeal:[3]  (1) whether the administrative law judge ("ALJ") erred in failing to find Plaintiff's knee impairment to be medically determinable and severe; (2) whether substantial evidence supports the ALJ's residual functional capacity ("RFC") finding to the extent he discounted the opinion of consulting examiner ("CE") Paula Bowman, Pys.D., and state agency psychologists; (3) whether the ALJ properly evaluated Plaintiff's mental capacity; (4) whether the ALJ erred in failing to limit Plaintiff's social functioning and concentration, persistence, or pace; (5) whether the ALJ failed to inquire into a conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"); and (6) whether the ALJ improperly relied on the VE's testimony to find jobs exist in significant numbers in the national economy that Plaintiff could perform.

## II.    Procedural History and Summary of the ALJ's Decision

On November 4, 2015, and December 3, 2015,[4] Plaintiff filed applications for DIB and SSI, respectively, alleging his disability began February 1, 2014, due to back, knee, and leg pain; nerve damage; arthritis; bipolar disorder; and depression.   Tr. 79–80, 93–94, 107–08, 208–17, 247.   Plaintiff's claims were denied initially and upon

---

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived.  *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[3] For clarity and judicial efficiency, the Court will discuss Plaintiff's issues in a different order than presented in the Joint Memorandum.

[4] The ALJ noted Plaintiff filed his SSI application November 20, 2015.   Tr. 22.   This appears to be a typographical error not material to his decision.

reconsideration.   Tr. 91, 105, 124–25, 141–42.   On May 19, 2016, Plaintiff requested a hearing before an ALJ on his claims.   Tr. 185.   ALJ William G. Reamon held a hearing on August 16, 2016, during which Plaintiff and VE Robert Lessne, Ph.D., testified.   Tr. 39–78.   On September 14, 2016, the ALJ found Plaintiff not disabled through the date of his decision.   Tr. 22–33.

At step one, the ALJ found Plaintiff "meets the insured status requirements of the Social Security Act through June 30, 2016."   Tr. 24.   The ALJ determined Plaintiff has not engaged in substantial gainful activity since February 1, 2014, the alleged onset date.   *Id.*   Next, the ALJ found that Plaintiff has severe impairments of lumbar and cervical spine degenerative disc disease, other unspecified arthropathies, chronic obstructive pulmonary disease ("COPD"), affective disorder, anxiety disorder, obesity, alcohol abuse disorder and a substance abuse disorder.   *Id.*

The ALJ concluded Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 25.   The ALJ then determined that Plaintiff had the RFC to perform light work [5] with certain

---

[5] The regulations define light work as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.   If someone can do light work, [it is determined] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

limitations, including that, due to his mental impairments, he "can perform no work above the SVP[6] 2 level."   Tr. 26.   Next, the ALJ found Plaintiff is unable to perform his past relevant work as a furniture sales person and retail manager.   Tr. 31. Considering Plaintiff's age, education, work experience and RFC, the ALJ concluded there are jobs that exist in significant numbers in the national economy Plaintiff can perform.   *Id.*   As a result, the ALJ found that Plaintiff is not disabled.   Tr. 32–33.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on February 7, 2017.   Tr. 1.   Accordingly, the September 14, 2016 decision is the final decision of the Commissioner.   Plaintiff filed an appeal with this Court on March 30, 2017.   Doc. 1.   The matter is now ripe for review.

## III.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).[7]   Substantial evidence is "more than a scintilla, i.e., evidence that must do

---

20 C.F.R. §§ 404.1567(b), 416.967(b).

6  "The DOT lists a specific vocational preparation (SVP) for each described occupation.   Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."   SSR 00–4p, 2000, at *3.

7  After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments.   *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c, 404.1527,

more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citation omitted).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

---

416.920a, 416.920c, 416.927 (effective March 27, 2017).   The Court will apply rules and regulations in effect at the time of the ALJ's decision.   *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. §§ 404.1527, 416.927 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

## IV.   Discussion

### a.   Whether the administrative law judge ("ALJ") erred in failing to find Plaintiff's knee impairment to be medically determinable and severe

A medically determinable physical or mental impairment is one that "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Social Security Regulations explain what is needed for a claimant to show an impairment:

> [A claimaint's] impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms.

20 C.F.R. §§ 404.1508, 416.908 (2016). The regulations clearly state that a claimant's statements alone "are not enough to establish that there is a physical or mental impairment." 20 C.F.R. §§ 404.1528, 416.928 (2016). Medically acceptable laboratory diagnostic techniques to establish a medical determinable impairment include "chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests." *Id.*

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do

basic work activities.   20 C.F.R. §§ 404.1520(c); 416.920(c).   "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."   *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).   "[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."   *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).   Before reaching the issue of severity, however, the ALJ first determines whether a claimant's alleged impairment is a medically determinable impairment.   *Lopez v. Comm'r of Soc. Sec.*, No. 8:14-cv-600-T-PDB, 2015 WL 12844407, at *5 (M.D. Fla. Sept. 25, 2015).

Here, at step two, after listing the impairments the ALJ found severe, he stated:   "While claimant alleged right knee degenerative joint disease, x-rays of the claimant's knee showed no substantive abnormalities to confirm such a diagnosis[;] the allegation is therefore considered non-medically determinable."   Tr. 24. Plaintiff argues the ALJ improperly rejected his claim of a knee impairment solely because a 2012 x-ray was negative.   Doc. 24 at 29.   Plaintiff cites observations from Adam Shuster, D.O., and Michael Rosenberg, M.D., that he argues support a medically determinable impairment.   *Id.*   Plaintiff argues, as his attorney did at the hearing, that the ALJ should have ordered a post-hearing consultative examination with a knee x-ray to evaluate the severity of the knee impairment.   *Id.* at 30, Tr. 75.

The Commissioner responds Dr. Rosenberg's records do not support a medically determinable impairment.   Doc. 24 at 32.   The Commissioner further argues that, even if Plaintiff had a severe impairment in his knee, it would not be relevant because it did not affect Plaintiff's ability to work the limited range of light work delineated by the ALJ.   *Id.* at 32–33.

On June 5, 2012, Plaintiff saw Dr. Shuster, who observed that he had "crepitation at both knees bilaterally with some 'soreness' to palpitation of the right knee."   Tr. 433.   He assessed Plaintiff with knee osteoarthritis.   *Id.*   Dr. Shuster broadly indicates in his plan notes that Plaintiff has been dealing with his pain for a number of years without any specific treatment.   *Id.*   At the time of Plaintiff's visit, Dr. Shuster noted Plaintiff was working full-time for Mattress Express.   Tr. 432.   A month after the visit, on July 9, 2012, Plaintiff had an x-ray of his left and right knees, which were negative for fractures, dislocations or any other abnormality.   Tr. 436, 439, 443.

On December 10, 2015, Plaintiff saw Michael Rosenberg, M.D., for a consultative examination.   Tr. 458.   He complained of bilateral knee pain that began ten years earlier and reported a history of knee surgery four years before.   *Id.* Plaintiff complained that the pain was constant and getting worse.   *Id.*   On examination, Dr. Rosenberg observed Plaintiff had a very slight limp favoring the right leg; could walk on his heels but not his toes; could squat 75%, limited by knee pain; and required no assistive devices or help getting on and off the examination table.   Tr. 459.   Dr. Rosenberg also noted Plaintiff could get up from a chair without

difficulty.  *Id.*  As for Plaintiff's range of motion, Dr. Rosenberg indicated he had pain in his knees on squatting only but noted range of motion of bilateral knees and hips elicited back pain.  Tr. 460.  Dr. Rosenberg diagnosed Plaintiff with mild bilateral knee pain.  Tr. 461.

Plaintiff also testified regarding his knees.  He stated he had surgery on his right knee after a fall that injured his knees and back to repair a hole in the meniscus, after which his knee was tight for about a year.  Tr. 47–48.  Plaintiff testified that both knees hurt him at the time of the hearing and had been hurting since as far back as 2012–2013.  Tr. 48.  At that time, when Plaintiff worked as a mattress salesman, he testified he was unable to load customers' mattresses for them as he had before and sometimes had to sit down several hours a day or elevate his feet to relieve the pain in both knees.  Tr. 48–49.  His left knee often had worse pain, but he never had a doctor formally diagnose what was the issue.  Tr. 49.  Plaintiff testified that, although he was terminated from his later position as a furniture salesman, he could not do the job because he cannot stand on his feet all day due to back and knee pain. Tr. 53.

The Court recommends the ALJ did not err in finding Plaintiff's knee pain to be non-medically determinable.  When Plaintiff saw Dr. Shuster in 2012, he complained of knee pain he had been having for years and had an x-ray of both knees done the following month.  Tr. 436, 439.  Both x-rays were negative.  *Id.*  Although Plaintiff suggests the ALJ should have ordered another set of x-rays given the time that had passed, he does not argue that his knee pain significantly worsened in the

intervening years such that an additional x-ray would be expected to show a medically determinable impairment where the previous ones had not, especially given Plaintiff's statements to Dr. Rosenberg that he suffered from knee pain for the previous ten years.   Tr. 458.   Moreover, Dr. Rosenberg's diagnosis of mild knee pain is insufficient to meet Plaintiff's burden to establish an impairment affecting his ability to work as demonstrated by medical evidence.   *Wind*, 133 F. App'x at 690. Nevertheless, because the Court recommends the matter be remanded to the Commissioner on another issue as discussed below, the Commissioner may reevaluate whether to order additional x-rays.

> b. *Whether the ALJ erred in giving little weight to the opinions of Dr. Bowman and the state agency psychologists*

When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.   20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).   Medical source opinions may be discounted when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole.   SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159–60 (11th Cir. 2004).   Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by

the ALJ, but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.   SSR 96-5p, 1996 WL 374183 (July 2, 1996); 20 C.F.R. §§ 404.1527(d)(1)–(2), 416.927(d)(1)–(2).   Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialists.   20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).

In the Eleventh Circuit, the law is clear that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).   The court reiterated in *Winschel*, "[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."   *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).   An ALJ who fails to "state with at least some measure of clarity the grounds for his decision" cannot be affirmed because the court cannot perform its duty to "scrutinize the record as a whole to determine whether the conclusions reached are rational."   *Id.* (citations omitted).

In his RFC finding, the ALJ reviewed the report of consultative psychological examiner Paula Bowman, Pys.D.   Tr. 28.   Dr. Bowman reported, "Upon examination, [Plaintiff's] demeanor and responsiveness to questions was cooperative.

His manner of relating, social skills, and overall presentation were adequate."   Tr. 469.   Although his mood and affect were anxious, Dr. Bowman observed Plaintiff's speech intelligibility was fluent, his voice clear, and his expressive and receptive languages were adequate.   *Id.*   Plaintiff also had coherent and goal directed thought processes with no evidence of delusions, hallucinations or disordered thinking. *Id.*   Dr. Bowman indicated Plaintiff's attention, concentration and memory skills were mildly impaired.   *Id.*   Dr. Bowman opined:

> Vocationally, [Plaintiff] can follow and understand simple directions and instructions.   He can perform simple tasks independently.   He has mild difficulty maintaining attention and concentration.   He has mild difficulty maintaining a regular schedule.   He has mild difficulty learning new tasks.   He can perform complex tasks with supervision. He has moderate to marked difficulty making appropriate decisions. He has moderate difficulty relating adequately with others.   He has moderate to marked difficulty appropriately coping with stress.   His difficulties are caused by symptoms related to depression, anxiety, and panic attacks.

Tr. 470.   Dr. Bowman further opined, "The results of this examination appear to be consistent with psychiatric and substance abuse problems, and these may significantly interfere with [Plaintiff's] ability to function on a daily basis."   *Id.*

> The ALJ stated:

> As for the opinion evidence, Dr. Bowman opined that the claimant had moderate to marked difficulties making appropriate decisions, moderate difficulty relating to others, and moderate to marked difficulties appropriately coping with stress. The undersigned gives little weight to the opinion of Dr. Bowman as her opinion amounts to only a snapshot of the claimant's functioning at one specific time, the opinion appears heavily reliant on the claimant's self-reports, and the opinion is inconsistent with substantial other evidence which showed the claimant to be less limited.

Tr. 30 (citing Tr. 466–71).

Plaintiff argues the ALJ's reasons for discounting Dr. Bowman's opinions are inadequate because (1) consultative examinations necessarily are snapshots of a claimant's condition at a single point in time; (2) they are also routinely based on a claimant's self-reports; and (3) the ALJ does not identify what other evidence is inconsistent with Dr. Bowman's opinion.   Doc. 24 at 21–22.   The Commissioner points to Dr. Bowman's notes that Plaintiff was cooperative and adequately related to her, had normal thought processes, could perform simple tasks independently, and could perform complex tasks with supervision.   *Id.* at 23–24.   Based on these notes, the Commissioner argues Dr. Bowman's findings that Plaintiff had moderate difficulty relating adequately with others, moderate to marked difficulty making appropriate decisions, and moderate to marked difficulty appropriately coping with stress were inconsistent with her examination.   *Id.* at 24–25.   The Commissioner argues they were also inconsistent with the record as a whole.   *Id.* at 25.   The Commissioner also argues Dr. Bowman's opinion was based primarily on Plaintiff's subjective complaints because she found moderate to marked limitations where her examination showed only mild ones.   *Id.*

The Court recommends the ALJ's decision to discount Dr. Bowman's opinion is supported by substantial evidence.   Initially, to the extent Plaintiff argues every consulting examiner only is giving an opinion in a snapshot of a moment in time, the law accounts for this because the opinion of a non-treating physician is not entitled to any deference or special consideration.   20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).   An ALJ need only state with

specificity the amount of weight given to allow for judicial review. *Winschel*, 631 F.3d at 1179. Further, the record supports the ALJ's rejection of Dr. Bowman's opinions. For example, Plaintiff's moderate difficulty relating to others and with other social functioning is inconsistent with his ability to interact with his daughter, drive, play games on the computer with others and shop in public. Tr. 25, 55–56, 470. His moderate to marked difficulty making appropriate decisions and coping with stress is inconsistent with his ability to handle his own money. Tr. 30, 470. The ALJ also reviewed Plaintiff's more recent medical records from 2016 and found them to be determinative of Plaintiff's mental function overall. Tr. 28–30, 472–502. The ALJ explained as to Plaintiff's psychological functioning:

> [T]he undersigned also finds that the medical treatment notes and clinical observation do not support the degree of limitation alleged. While the record shows that the claimant has had a remote history of substance abuse and psychological distress, more recent examination in 2012 showed the claimant to have no significant depression. While claimant reported ongoing suicidal ideations, claimant has shown no recent inclination towards action or that these thoughts caused limitations in his daily activities which are outlined above. Examination in 2015 showed normal speech, thought processes, and orientation. His attention, concentration, and memory appeared only mildly impaired. His mood was anxious. By contrast in 2016, primary care exam showed [Plaintiff] to have a euthymic mood. His affect was normal and his thought content revealed no impairment. Despite [Plaintiff's] variety of reported symptoms, examination at SalusCare was unremarkable but for an apparent depressed and anxious mood. Additionally, [Plaintiff] has not sought or received ongoing psychiatric care or been hospitalized for psychological distress which further suggests that his condition is not as severe as is alleged.

Tr. 29–30.

The 2016 records the ALJ discussed also support the ALJ's rejection of the opinions regarding Plaintiff's social limitations provided by the non-examining state

agency psychologists, Barry Morris, Ph.D., and Jessica Anderton, Psy.D.   On December 22, 2015, Dr. Morris initially assessed Plaintiff's mental RFC, opining Plaintiff's ability to understand and remember detailed instructions is moderately limited such that Plaintiff is able to recall and understand simple instructions.   Tr. 88, 102–03.   Dr. Morris also opined Plaintiff's ability to carry out detailed instructions and maintain attention and concentration for extended periods is moderately limited.   Tr. 89, 103.   Similarly, Dr. Morris opined Plaintiff is moderately limited to simple tasks with adequate levels of concentration, persistence and pace, and moderately limited in his interaction with the general public such that he would function best in settings where intensive interaction is not required.   Tr. 89, 103–04.   On March 15, 2016, Dr. Anderton affirmed Dr. Morris's initial assessment, opining that, while Plaintiff's mental health issues are severe, his functional limitations are moderate, not marked.   Tr. 117, 134.   Dr. Anderton's mental RFC findings mirrored those of Dr. Morris, as she opined that Plaintiff's abilities to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; and interact appropriately with the general public are moderately limited.   Tr. 121–22, 138–39.   Dr. Anderton also opined that Plaintiff has adaptive limitations, namely that Plaintiff is moderately limited in his ability to respond appropriately to changes in the work setting and set realistic goals or make plans independently of others.   Tr. 122–23, 139–40.

The ALJ discounted the social interaction limitation aspect of the findings of Dr. Morris and Dr. Anderton.   Tr. 30.   Plaintiff argues this was error because his

subsequent records in 2016 support rather than contradict the social limitations the state agency psychologists found.   Doc. 24 at 22–23.   At that time, Plaintiff was having suicidal thoughts and his medical providers found he was suffering from major depressive disorder, generalized anxiety disorder and opioid use disorder.   *Id.*   The Commissioner argues the medical evidence from 2016 the ALJ relied on in discounting the state agency psychologists' opinions supports the ALJ's decision because such evidence does not support the degree of social limitation Dr. Morris and Dr. Anderton found.   *Id.* at 26.

As an initial matter, Dr. Morris's and Dr. Anderton's opinions as to Plaintiff's ability to perform tasks and interact socially are assessments of Plaintiff's RFC, and the ALJ was not required to accord any weight to those assessments.   *Beegle v. Soc. Sec. Admin,* 482 F. App'x 483, 486 (11th Cir. 2012).   Moreover, the Court recommends substantial evidence supports the ALJ's discounting these findings as Plaintiff interacted with Dr. Bowman, SalusCare and his primary care physicians without any difficulties during roughly the same period of time.   Tr. 469 (noting cooperative demeanor and responsiveness to questions; adequate manner of relating, social skills and overall presentation; and coherent and goal directed thought processes); Tr. 483–84 (noting coherent, logical and goal directed thought; fair judgment and insight; casual appearance; moderate eye contact; no abnormal motor movements; and a cooperative attitude); Tr. 486 (noting Plaintiff was articulate and able to answer questions easily and pleasantly); Tr. 490 (noting Plaintiff expressed

gratitude and appreciation for completing intake and effort to assist him with his medication).

In contrast, the support for the social functioning limitations both Dr. Bowman and the state agency psychologists found appears to be Plaintiff's own reports of such issues, which the ALJ found only partially credible.[8]   Tr. 468 (noting Plaintiff's reports of irritability), Tr. 480 (noting Plaintiff stated he had a very bad attitude).   If the ALJ had found Plaintiff completely credible, he might have come to the opposite conclusion; however, the question for the Court is whether substantial evidence supports the ALJ's findings, not whether the record could support a different one. *Parks v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015); *see also Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358.   Based on the medical evidence listed above, the Court recommends substantial evidence supports the ALJ's decision to discount the weight he gave to the opinions of Drs. Bowman, Morris and Anderton.   Nevertheless, because the Court recommends remand to the Commissioner on another issue as explained below, which may require further opinion evidence regarding Plaintiff's mental limitations, the Commissioner may reevaluate as appropriate all of the opinion evidence.

---

[8] Plaintiff does not challenge the ALJ's credibility findings; thus, the issue is waived. *Access Now, Inc.*, 385 F.3d at 1330.

> c. *Whether the ALJ properly evaluated Plaintiff's mental capacity and accounted for Plaintiff's limitations in concentration, persistence and pace*

Because two of Plaintiff's issues involve the ALJ's assessment of his mental capacity, the Court addresses them together.   Plaintiff argues SSR 96-8p requires the ALJ to assess his functional limitations or restrictions on a function-by-function basis, including his mental abilities.   Doc. 24 at 15.   Instead, Plaintiff argues, the ALJ simply limited Plaintiff to an SVP of 2, equivalent to unskilled work.   *Id.* at 16. Plaintiff argues courts have held this insufficient, citing *Olsen v. Astrue*, 858 F. Supp. 2d 1306 (M.D. Fla. 2012) and *Richter v. Comm'r of Soc. Sec.*, 379 F. App'x 959 (11th Cir. 2010).   Doc. 24 at 16–17.   Plaintiff argues the SVP 2 limitation in the ALJ's RFC finding only relates to the time it takes him to learn a new job but fails to account for the remainder of his mental functions, which were outlined in the function-by-function analysis Dr. Bowman performed.   *Id.* at 17–18.   Similarly, Plaintiff argues the ALJ erred by failing to include in his RFC and hypothetical to the VE limitations in social functioning and concentration, persistence and pace despite finding moderate difficulties in both areas.   *Id.* at 33–34.

The Commissioner responds the ALJ identified Plaintiff's limitations by function, which would include physical abilities under subsection b, mental abilities under subsection c, and other abilities affected by impairment(s) under subsection d of 20 C.F.R. § 404.1545 and 20 C.F.R. § 416.945.   Doc. 24 at 18.   She argues the ALJ considered Plaintiff's testimony, a consultative psychological examination, treatment notes from SalusCare and two state agency psychologist reports to determine

Plaintiff's mental RFC.   *Id.*   The Commissioner notes the ALJ found Plaintiff had moderate difficulties in concentration, persistence and pace at step three.   *Id.* at 20. She argues the ALJ took these into account by limiting the skill level of jobs Plaintiff could perform to unskilled.   *Id.*   The Commissioner also argues the ALJ implicitly found no work-related social limitations because of Plaintiff's interactions with his daughter and daily activities, including interacting with others online.   *Id.* at 20–21. The Commissioner further responds to Plaintiff's related argument regarding his moderate limitation in concentration, persistence and pace by arguing that the medical evidence shows Plaintiff can perform unskilled work.   *Id.* at 35.   She also repeats her argument that the ALJ implicitly determined Plaintiff's moderate difficulties in social functioning did not create work-related social limitations.   *Id.* at 35–36.

When the ALJ finds that an impairment does not meet or equal a listed impairment at step three, the ALJ then will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record.   Tr. 18-19; 20 C.F.R. §§ 404.1520(e), 416.920(e).   The RFC is the most that a claimant can do despite his limitations.   *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).   At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.   *See* 20 C.F.R. §§ 404.1546(c), 416.945(a).   For these purposes, relevant evidence in the record includes any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c).   The claimant's age, education and work

experience, and whether he can return to his past relevant work also are considered in determining his RFC.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)).  The RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite his impairments.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).  Relevant here, the ALJ also "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe.  SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *see* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *Gibson v. Heckler*, 779 F.2d 619, 622-23 (11th Cir. 1986).  The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability.  *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)).

After the ALJ found Plaintiff's affective disorder and anxiety disorder, and alcohol and substance abuse disorders, among other physical impairments, to be severe, he discussed whether Plaintiff's impairments or combination of impairments met or equaled a listing.  Tr. 24–25.  In doing so, the ALJ considered four broad functional areas for evaluating mental disorders known as the "paragraph B" criteria.[9]  Tr. 25.  The ALJ discussed his findings:

> In activities of daily living, [Plaintiff] has mild restriction.  [Plaintiff] reported that he was able to cook, could perform light cleaning, did laundry, shopped, watched television, and was able to shower and dress himself (4F).  [Plaintiff] stated that he was able to perform his personal

---

[9] 20 C.F.R., Part 404, Subpart P. Appendix 1.

care including showering and dressing independently.   He could prepare simple meals, drive, and shop as necessary.   He could manage his own money and spent [sic] time watching television and using a computer (5F).   In 2016 [Plaintiff] indicated he had no difficulty dressing, washing, or feeding himself.

In social functioning, [Plaintiff] has moderate difficulties. [Plaintiff] interacted regularly with his daughter and was able to drive and shop in public.   [Plaintiff] generally appeared cooperative.

With regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties. [Plaintiff] was able to manage his own money, use a computer regularly, and watch television.   Examination showed generally minor abnormalities.

As for episodes of decompensation, [Plaintiff] has experienced no episodes of decompensation, which have been of extended duration.

*Id.*   The ALJ explained that these limitations he identified are not RFC findings but used to rate the severity of Plaintiff's mental impairments at steps two and three. Tr. 26.   Nonetheless, the ALJ stated his RFC finding reflects the degree of limitation he found in the "paragraph B" mental function analysis.   *Id.*

In his RFC finding, the ALJ limited Plaintiff to jobs that have an SVP level of 2, which corresponds to unskilled work.   *See* SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).   Unskilled work requires "little or no judgment to do simple duties." 20 C.F.R. §§ 404.1568(a), 416.968(a).   Although the ALJ explained the weight he gave the opinion evidence and indicated that he found Plaintiff's impairments were not as severe as alleged, he did not explain the basis for his finding that Plaintiff was limited to unskilled work based on his mental impairments or discuss his findings as to the "paragraph B" criteria in relation to Plaintiff's RFC.   The ALJ is not required to include moderate limitations in concentration, persistence or pace in his RFC

assessment; however, these findings are relevant when determining RFC. *Bowman v. Comm'r of Social. Sec.*, No. 6:13–cv–614–Orl–31TBS, 2014 WL 4059140, at *4 (M.D. Fla. July 28, 2014). In *Winschel*, the Eleventh Circuit clarified that an ALJ's RFC assessment must incorporate limitations in concentration, persistence or pace that the ALJ identified when making step two or three findings, whether explicitly or implicitly. *Winschel*, 631 F.3d at 1180–81. Alternatively, as the Eleventh Circuit explained, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting [Plaintiff's RFC and the corresponding] hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel*, 631 F.3d at 1180 (citations omitted); *see also Hurst v. Comm'r of Soc. Sec.*, 522 F. App'x 522, 525 (11th Cir. 2013); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876–77 (11th Cir. 2012); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 n.1 (11th Cir. 2011).

Here, the ALJ did not explicitly include any limitations in concentration, persistence or pace, or any social limitations, in his RFC. Tr. 26. The only limitation relating to Plaintiff's mental impairments at all is that he is limited to jobs with an SVP level of 2. *Id.* The ALJ does not explain how he concluded Plaintiff was limited to unskilled work. The limitation to unskilled work is not necessarily related to limitations in concentration, persistence or pace, where there are no limitations on the ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-

workers and work situations; and deal with changes in a routine work setting."
*Brunson v. Astrue*, 850 F. Supp. 2d 1293, 1302 (M.D. Fla. 2011).   Based on *Winschel*,
and subsequent unpublished Eleventh Circuit decisions, substantial evidence would
support the ALJ's RFC finding only if the medical evidence demonstrated that
Plaintiff still can perform unskilled work despite his limitations in concentration,
persistence or pace.   *See Shuman v. Colvin*, 2013 WL 3636527 (M.D. Fla. July 11,
2013) (collecting cases); *see also Olsen*, 858 F. Supp. 2d at 1318 ("Unskilled work has
been found insufficient to account for difficulties in concentration, persistence or pace,
unless the medical evidence clearly demonstrates otherwise.").

Here, the Court recommends the ALJ's decision provides insufficient findings
to determine that the ALJ adequately accounted for all of Plaintiff's limitations
resulting from his mental impairments in determining Plaintiff's RFC.   There is
some medical evidence to suggest Plaintiff retains the ability to complete simple tasks
despite his limitations in concentration, persistence or pace—namely the portions of
the opinions of the state agency psychologists Drs. Morris and Anderton the ALJ did
not reject.   Tr. 88, 102–04 (Dr. Morris's opinions Plaintiff is able to recall and
understand simple instructions and moderately limited to simple tasks with
adequate levels of concentration, persistence and pace), Tr. 121–22, 138–39 (Dr.
Anderton's similar opinions).   Portions of Dr. Bowman's opinion could also support
Plaintiff's ability to perform unskilled work, although the Court cannot determine
the extent to which the ALJ relied on her opinion to exclude any greater mental
limitations from Plaintiff's RFC.   Tr. 470 (indicating Plaintiff could perform more

complex tasks with supervision).   The ALJ, however, appears only to have discounted findings or evidence suggesting the severity of Plaintiff's impairments, but not evaluated what Plaintiff actually could do in light of the limitations the ALJ found in his evaluation of the paragraph B criteria.   The basis for the ALJ's determination of Plaintiff's RFC in light of his mental limitations, therefore, is unclear.

At a minimum, the ALJ should have addressed Plaintiff's limitation in social functioning.   Instead, the ALJ simply omitted social limitations from the RFC, leaving the Court unable to discern the reasoning behind the ALJ's finding no social limitations whatsoever.   This appears inconsistent with the ALJ's finding that Plaintiff had moderate limitations in social functioning.   Tr. 25.   The Commissioner suggests the ALJ implicitly found this limitation only related to social interactions outside of the work environment.   Doc. 24 at 35–36.   The Court cannot make such an assumption, however, as the ALJ cited only interactions outside of the work environment to demonstrate Plaintiff's social limitations were moderate—his relationship with his daughter, and his ability to drive, play games on the computer with others and shop in public.   Tr. 25, 55–56, 470.   The ALJ also cited Plaintiff's interactions with his medical providers in discounting greater than moderate limitations, as detailed above.   Tr. 469, 483–84, 486. 490.   This suggests the opposite conclusion; Plaintiff may have only had social difficulties in the workplace. Indeed, Plaintiff testified that he was fired from his job as a mattress salesman for arguing with a manager.   Tr. 63.

Based on the foregoing, the Court recommends the ALJ did not properly address Plaintiff's limitations in concentration, persistence or pace or his limitations in social functioning in his RFC assessment such that it is unclear whether substantial evidence supports his decision.   Thus, the Court recommends the Commissioner's decision be reversed and remanded as to this issue.   *See Olsen*, 858 F. Supp. 2d at 1318 (explaining whether medical evidence supports generic limitations "is a fact specific inquiry" for the Commissioner, not the courts, to make after weighing the evidence).

### d.  Whether the ALJ erred at Step Five

At step five of the sequential evaluation process, the burden shifts to the Commissioner to produce evidence that there is other work available in significant numbers in the national economy the claimant can perform given his RFC.   *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).   When a claimant, such as here, cannot perform the full range of work at a given exertional level or has non-exertional impairments that significantly limit his basic work skills, an ALJ may rely solely on the testimony of a VE.   20 C.F.R. §§ 404.1566, 416.966; *Jones*, 190 F.3d at 1230; *Foote*, 67 F.3d at 1559.   A VE's testimony will constitute substantial evidence if the ALJ's hypothetical question includes all of a claimant's functional limitations.   *Jones*, 190 F.3d at 1229.   "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant."   *Ingram*, 496 F.3d at 1270 (citation and quotation marks omitted).   While an ALJ's hypothetical question must take into account all of a

claimant's impairments, *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), the question need not include impairments that the ALJ has properly determined to be unsupported by the evidence in the record.   *Crawford*, 363 F.3d at 1161.

Plaintiff raises two issues as to step five—whether the VE's testimony conflicts with the DOT and whether the jobs the VE identified were consistent with Plaintiff's RFC and exist in significant numbers in the national economy.   Doc. 24 at 9–11, 26–29.   On the current record, the Court recommends the ALJ did not err as to these issues.   But because the ALJ otherwise erred in assessing Plaintiff's RFC without either incorporating all of his mental limitations or explaining the basis for omitting them, as discussed above, the Commissioner must reevaluate Plaintiff's ability to perform other work following the reevaluation of Plaintiff's RFC, which may require additional VE testimony.

## III.   Conclusion

The Court recommends the ALJ did not properly address Plaintiff's limitations in concentration, persistence or pace or his limitations in social functioning in the ALJ's assessment of Plaintiff's RFC.   In the absence of either express or implicit inclusion of moderate limitations in these areas in Plaintiff's RFC, or medical evidence clearly supporting Plaintiff's ability to do unskilled work despite these limitations, the Court cannot conclude that substantial evidence supports the ALJ's decision.   Therefore, the Court recommends reversal and remand.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.    The decision of the Commissioner be **REVERSED** and this matter be

**REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),

for the Commissioner to:

> A.    Reevaluate Plaintiff's RFC in light of his alleged mental impairments, which may require additional opinion evidence;
>
> B.    Reevaluate whether there are jobs available in significant numbers that Plaintiff can perform given his RFC, which may require additional testimony from a vocational expert;
>
> C.    Make any other determinations consistent with this Report and Recommendation, or in the interests of justice.

2.    The Clerk of Court be directed to enter judgment pursuant to sentence

four of 42 U.S.C. § 405(g) in favor of Ronald J. Castrovianci, and close the file.

DONE and ENTERED in Fort Myers, Florida on this 2nd day of August, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record